The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEANNE SUCHODOLSKI,<br><br>Plaintiff,<br><br>v.<br><br>TERENCE EMMERT, Acting Secretary of the Navy[1],<br><br>Defendant. | Case No. 3:23-cv-05047-BHS<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>Noted for Consideration:<br>February 28, 2025 |

Plaintiff Jeanne Suchodolski claims that the Department of the Navy ("Defendant") caused her to suffer severe emotional and physical distress requiring treatment from numerous medical providers, and seeks damages for both her pain and suffering and the cost of her treatment. But despite putting her health and medical care at issue in this litigation, Suchodolski has obstructed Defendant's ability to obtain relevant medical records, including those for treatment Suchodolski alleges was directly caused by Defendant's conduct.

On February 23, 2024, Defendant served Suchodolski with discovery requests seeking information and documents regarding her alleged ailments and treatment. Suchodolski agreed to

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Defendants substitute Acting U.S. Secretary of the Navy Terence Emmert for Carlos Del Toro.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

produce responsive records, but a full year later, her production remains woefully deficient. Defendant has tried to avoid burdening the Court with a discovery dispute, repeatedly asking Suchodolski to complete her production or sign a medical records release and ultimately taking on the onus of subpoenaing providers directly rather than filing a motion to compel.

Suchodolski's Motion for a Protective Order is meritless and should be denied, as discovery has confirmed that the records Defendant seeks are relevant to Suchodolski's damages claims. Furthermore, the Court should expedite the production of relevant materials by ordering Suchodolski to sign an authorization for the release of her medical records directly to Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

Suchodolski's complaint seeks damages for alleged unlawful discrimination and retaliation in employment. Dkt. 26. Her Initial Disclosures list two treating psychologists for "PTSD" as relevant witnesses, and list "Plaintiff's relevant medical records" among documents supporting her claims. Ex. A at 8, 10.[2]

On February 23, 2024, Defendant served discovery requests. Ex. B. Interrogatory No. 6 (the "Interrogatory") asked for a list of medical providers Suchodolski saw for conditions she "attribute[s] to actions or omissions of Defendant," along with the symptoms experienced and the date and extent of her treatment, starting six years before her complaint was filed. *Id.* at 11. Request for Production No. 6 (the "RFP") sought documents concerning her treatment or conditions or, alternatively, requested authorization for Defendant to obtain records directly from providers. *Id.* at 14. Suchodolski responded on April 7, 2024. Her response to the Interrogatory included boilerplate objections and a list of seven medical providers (later supplemented to include an eighth provider, *see* Ex. D at 8), but for all but one of them, she did not identify any

[2] Citations to "Decl." are to the concurrently filed Declaration of Sean M. Arenson in Support of Defendant's Response in Opposition to Plaintiff's Motion for Protective Order, and citations to "Ex." are to Exhibits attached to that declaration.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

dates of treatment. Ex. C at 7-8. Her response to the RFP included boilerplate objections, production of a self-administered online PTSD screening test and invoices (but no clinical records) for psychotherapy, and a statement that she "is in the process of determining whether additional records exist and will supplement this response as necessary." *Id.* at 9; Decl. ¶ 4.

On April 29, 2024, Defendant wrote to Suchodolski's counsel regarding her deficient discovery responses. Ex. E. Counsel responded that she was "in the process of obtaining all the relevant records from each provider and intend to supplement as soon as we are in receipt of those documents." Ex. F. Having received no further update, Defendant followed up on May 30, 2025. Ex. G at 1-2. Counsel responded that they were "diligently working" to obtain responsive records and asked for an agreement to "a protective order to ensure any records produced are marked as confidential and not disseminated." *Id.* at 1. Defendant agreed and the Court entered a Stipulated Protective Order on June 14, 2024. Dkt. 31.

On June 21, 2024, Suchodolski's counsel wrote to Defendant that, with the protective order in place, Suchodolski would "start making a rolling production." Ex. H. After two more months passed without any rolling production, Defendant wrote to counsel:

> We remain concerned with Plaintiff's election to obtain and produce her own medical records rather than providing authorization for our office to receive them directly from her providers, as Defendant must receive these documents sufficiently far in advance of the close of discovery to evaluate them for the purpose of deposing Plaintiff, any relevant treating providers, and any damages witnesses identified by Plaintiff.

Ex. I at 4. Defendant's letter noted that "federal courts have held that obtaining a party's written consent for the release of medical records represents the least expensive and most efficient means of procuring information from medical or counseling providers," and urged Suchodolski to promptly execute an enclosed authorization. *Id.* at 3 (quoting *EEOC v. Sheffield Fin., LLC*, 2007 WL 1726560, at *6 (M.D.N.C. June 13, 2007)).



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

Finally, on August 30, 2024, more than six months after Defendant propounded the RFP, Suchodolski made a first production of responsive medical records. Ex. J. This production included clinical records from Dr. Laureen Light for June 21, 2022, to May 9, 2024, (which had been in Suchodolski's possession since May 21); records from Overlake Medical Center for a June 13, 2023, encounter (with each page cut off at the bottom); and 15 pages of unidentifiable records, all cut off at the left margin, lacking any apparent indication of the provider or date of the encounter(s). Decl. ¶ 11.

On January 15, 2025, Defendant deposed Suchodolski. By agreement, the deposition was adjourned in the late afternoon, to be completed on January 23. Decl. ¶ 13.

On January 16, Defendant wrote Suchodolski's counsel regarding her still-deficient production. Ex. K at 4. Defendant noted that medical records had not been produced for *six of the seven* providers listed in Suchodolski's original Interrogatory response. *Id* at 5. Defendant stated:

> We previously notified you of deficiencies in production of medical documentation in correspondence dated April 29, 2024, May 30, 2024, and August 23, 2024. On each occasion, Defendant requested that Ms. Suchodolski authorize Defendant to obtain her medical records directly from the providers, but she has declined to do so.
>
> Defendant will be significantly prejudiced if the deficiency in Ms. Suchodolski's production is not cured in advance of the continuation of her deposition on January 23, 2024 [*sic*]. Please immediately produce the missing records.

*Id.* On January 21, 2025, Suchodolski's counsel responded: "**All responsive records have already been produced**." *Id.* at 3-4. (emphasis added).

On January 23, 2025, Suchodolski's deposition resumed. Decl. ¶ 13. Suchodolski confirmed under oath that she possessed responsive medical records, not yet produced, for treatment for respiratory symptoms she alleges were caused by Defendant. Ex. L at 56:14-24, 59:5-12, 73:17-23. She also confirmed that she was seeking damages relating to treatment by numerous other providers and encounters for which she had not produced relevant records,



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

including her primary care physician (Dr. Kraft), a second psychotherapist (Laura Baker), an unnamed urgent care clinic in Massachusetts, and a dentist. *Id.* at 55:12-56:4, 56:14-58:2. Suchodolski testified that she has a history of depression from "sometime in the early 2000s" and again around 2014-2017, acknowledged that she was unsure of her formal psychological or psychiatric diagnoses at those times, and stated she was put on medication of unknown type and dosage. *Id.* at 61:4-62:4, 64:12-65:12. She also explained that her depression beginning around 2014 was triggered by a friend committing suicide, which she described as "traumatizing," and that she has had a "list" of concussions dating back to her childhood, including at least one sometime between 2010 and 2015, for which she was prescribed medication that she declined to take. *Id.* at 61:4-62:4, 65:15-66:7, 71:11-18.

On January 27, 2025, Defendant again wrote Suchodolski's counsel, asking that she "fully comply with RFP 6 no later than Wednesday, January 29" by either producing "all responsive records not yet provided, including any certifications received from third parties confirming that no records exist," or by providing a signed authorization for Defendant to obtain records directly. Ex. K at 2-3. Defendant explained that absent compliance, "we will proceed to issue subpoenas to the providers to obtain these records." *Id.* Defendant's January 29 deadline passed without any further production, so on January 31, 2025, Defendant served Suchodolski's counsel with notices that subpoenas would be served on each provider listed in Suchodolski's original Interrogatory response.[3] Defendant also served notice on February 7, 2025, that a subpoena would be served on the employer of Laura Baker, a psychotherapist not listed in Suchodolski's Interrogatory response, but whom Suchodolski testified had treated her for PTSD. Ex. L at 55:23-56:4, 59:13-60:22. Because Suchodolski's Interrogatory response did not list the

[3] Suchodolski filed Defendant's notices with her motion at Dkt. 39-1. Some entity names appearing on Defendant's notices differ from the informal provider names Suchodolski provided in her discovery response. *See* Decl. ¶ 18.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

dates of her treatment, Defendant's notices encompassed Suchodolski's records from these providers for the same period as the Interrogatory: January 17, 2017, to present. Dkt. 39-1. But because of Suchodolski's testimony that she was diagnosed with an unspecified psychological condition in the "early 2000s," Defendant's subpoenas would also seek records "from January 1, 1998, to present for all services sought or provided for any psychological or mental injury, condition, or ailment." *Id.*

On February 4, 2025, two weeks after her counsel represented that all responsive records had been produced prior to her deposition, Suchodolski produced 121 pages of records including clinical notes from a December 26, 2020, encounter at Overlake Urgent Care, clinical notes from Eastside Family Medical Center dated March 2020 to January 2024, and invoices—but no corresponding clinical records—from Dr. Light, Emerson Health, and Issaquah Endodontics. Decl. ¶ 5.

On February 6, 2025, Defendant informed Suchodolski of its intent to depose treating psychotherapist Laura Baker, noted that no records from Baker had been produced, and asked Suchodolski to either produce those records or provide a release for Defendant to obtain them from the provider. Ex. M at 2-3. Suchodolski's counsel responded the same day, stating, "I will ask Ms. Suchodolski about the Baker records." *Id.* at 2. Having received no response, on February 14 and February 20, ten and four days before Baker's scheduled deposition, respectively, Defendant again emailed Suchodolski's counsel asking for the missing Baker records and noting that Defendant would be irreparably prejudiced if the records were not produced before Baker's scheduled deposition. *Id.* at 1. Defendant again received no response and was forced to take Baker's deposition on the final day of discovery without Suchodolski having produced any records from Baker. Decl. ¶ 14. Baker testified that she had seen Suchodolski for seven counseling sessions from 2023-2024 and had retained records from those



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

sessions, but neither Suchodolski nor her counsel had *ever* requested them. *Id.* ¶ 19. Baker admitted her recollection of Suchodolski's counseling was incomplete, and Defendant was unable to refresh her recollection without the responsive records. *Id.*

On February 12, 2025, Suchodolski's counsel emailed Defendant stating that Defendant's intended subpoenas were overbroad, that only "records from 2021 onward would be pertinent," and that if Defendant did not agree to narrow the subpoena's accordingly, Suchodolski would seek a protective order. Ex. N at 3-4. Counsel exchanged a series of emails in which Defendant explained its position, offered to meet and confer telephonically, and offered to compromise by limiting its subpoena for psychological records to ten years before Suchodolski alleges her harassment began in 2019. *Id.* at 1-3. Without responding to Defendant's offers to telephonically confer or compromise, Suchodolski filed the instant motion for protective order.

On February 20, 2025, Defendant again emailed Suchodolski's counsel regarding missing records. Ex. M at 1. Defendant noted that Suchodolski had recently produced invoices for treatment by Dr. Light through November 2024 but had not produced any corresponding clinical records later than May 2024, and demanded production of the missing records in advance of Dr. Light's deposition. *Id.* The morning of Dr. Light's deposition, February 21, 2025, Suchodolski produced Dr. Light's clinical notes for June 2024 through February 2025. Ex. O; Decl. ¶ 16.

During her deposition, Dr. Light testified, in relevant part, as follows:

- Dr. Light has treated Suchodolski from 2003-2008; 2013-2019; and 2022-present.
- Suchodolski was diagnosed with adjustment disorder with depression during her initial course of treatment. Dr. Light could not recall whether she made any other diagnoses of Suchodolski prior to June 2022, but believed she may have diagnosed her with an anxiety-related disorder.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

- Suchodolski's current diagnosis of PTSD represents an "exacerbation" of the emotional distress she was already experiencing prior to June 2022.
- Suchodolski's PTSD diagnosis is based in part on Dr. Light's observations in treating Suchodolski since 2003. If Dr. Light had not been Suchodolski's treating provider prior to June 2022, she would have taken a full history of the details of her earlier psychotherapy as an input in forming her current clinical impressions.
- Suchodolski has never requested records from Dr. Light predating June 2022.
- Dr. Light has maintained clinical records of Suchodolski's treatment dating back to 2003 and if she receives a request authorized by Suchodolski or a court order, she will search for and produce those records.

Decl. ¶ 20. Additionally, Dr. Light testified that any other diagnoses she has made for Suchodolski would be reflected in her records, but she was generally unable to testify regarding her treatment of Suchodolski prior to June 2022 because she had not recently reviewed those notes. *Id.* Defendant was unable to refresh her recollection because those records have not been produced.

Since Suchodolski filed the instant motion, Defendant has paused its document subpoenas pending the Court's ruling.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts "interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Gold Creek Condo.-Phase I Ass'n of Apartments Owners v. State Farm Fire & Cas. Co.*, 2022 WL 1213263, at *2 (W.D. Wash. Apr. 25, 2022) (citation omitted).



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

"Under federal law, there is no physician-patient privilege protecting medical records from discovery." *Erickson v. Biogen, Inc.*, 2019 WL 3238470, at *2 (W.D. Wash. July 18, 2019). Federal law does recognize a waivable psychotherapist-patient privilege. *Id.* It is well established in this district that a plaintiff who alleges "more than 'garden-variety' emotional distress" waives the psychotherapist-patient privilege. *Dawson v. S. Corr. Entity*, 2021 WL 2012310, at *3 (W.D. Wash. May 20, 2021). "A plaintiff waives the privilege by alleging more complex distress, including 'any specific psychiatric injury or disorder, or unusually severe distress.'" *Id.* (citation omitted).

To obtain a protective order, the party resisting discovery must show "good cause." Fed. R. Civ. P. 26(c)(1). "The Ninth Circuit has held that there are 'liberal discovery principles' under the Federal Rules and that the party resisting discovery thus carries a 'heavy burden of showing' why a request for discovery should be denied." *Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684, at *2 (W.D. Wash. Sept. 15, 2020) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## <u>ARGUMENT</u>

### A. Suchodolski's Motion for a Protective Order Should be Denied.

Suchodolski admits that she has "waived the physician/psychotherapist-patient privilege with regard to relevant physical and mental health records." Dkt. 39 at 5. This is indisputable, as there is no federal physician-patient privilege, and Suchodolski's allegation that Defendant caused her to suffer PTSD, insomnia, and stress-induced respiratory illness and dental injury are more than garden-variety emotional distress. *See Nguyen v. Wal-Mart Assocs., Inc.*, 2024 WL 4490628, at *2 (N.D. Cal. Oct. 15, 2024) ("[S]pecific mental injuries such as *post-traumatic stress disorder*, depression, *insomnia*, and suicidal ideation are not garden variety. *Physical manifestation* of emotional distress may also indicate that the distress is more than garden



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

variety.") (cleaned up and emphases added). Because Defendant seeks non-privileged records, Suchodolski's only grounds to challenge Defendant's subpoenas is relevancy. But Suchodolski's and Dr. Light's deposition testimony establishes that these records are highly relevant to Suchodolski's claims for both compensatory damages and out-of-pocket medical expenses.

Suchodolski still has not produced *any* medical records from several providers she has stated treated her for conditions she attributes to Defendant's conduct. Decl. ¶ 5. And Suchodolski apparently never requested records from providers for the full period covered by the RFP, dating to January 17, 2017. For example, Dr. Light testified that she was treating Suchodolski from September 2013 until April 2019—the *same month* Suchodolski alleges Defendant's harassment began, Dkt. 26 ¶ 16—but Suchodolski only requested records dating from June 2022 onward, thereby omitting more than two years of responsive psychotherapy records. Decl. ¶ 20. Importantly, Suchodolski did not make any specific objection to the time-period for records sought by Defendant's discovery. Ex. D at 7, 9. Suchodolski's boilerplate overbreadth objection is invalid, *see Bellue v. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 43913, at *3 (W.D. Wash. Mar. 18, 2019), and her objections made for the first time in the instant motion are untimely and waived, *see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Rather than moving to compel production by Suchodolski, Defendant served notices of intent to subpoena seven medical providers identified in Suchodolski's Interrogatory response, plus treating psychotherapist Laura Baker. Dkt. 39-1. Because Suchodolski testified to a history of physical and emotional trauma, including concussions, a friend's suicide, and an unspecified psychological diagnosis beginning in the "early 2000s," Ex. L at 61:4-62:4, 65:15-66:7, Defendant seeks records for psychological conditions from January 1, 1998, to the present. For other medical records not involving a psychological condition, Defendant's subpoena seeks



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

documents for the same period encompassed by the RFP: six years before the filing of her complaint.

These time periods are reasonable. Suchodolski received ten years of treatment for multiple instances of depression beginning in 2003, but prior to Defendant's alleged conduct, and she does not remember her specific clinical diagnoses or what medications she was prescribed. Dr. Light testified that Suchodolski's PTSD diagnosis is based in part on her psychological history and represents an "exacerbation" of her prior emotional state. Dr. Light was unable to comment on any specific relationship between Suchodolski's current PTSD diagnosis and her pre-existing psychological conditions because she could not remember what she diagnosed Suchodolski with between 2014 and 2019, and Defendant was unable to refresh her recollection because the relevant records have not been produced.

Suchodolski attempts to characterize her earlier psychological condition as "situational" and unrelated to the conditions she alleges Defendant caused. Dkt. 39 at 4-5. But Suchodolski's self-serving opinion regarding the relevance of her medical records cannot preclude Defendant from testing alternative theories through discovery. "A party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Ginter v. BNSF Ry. Co.*, 2014 WL 294499, at *3 (W.D. Wash. Jan. 24, 2014) (citation omitted). Here, Suchodolski improperly "seeks to prevent [Defendant] from accessing records that would allow it to defend against the claim that Plaintiff's mental anguish, which includes a damages claim for psychiatric disorders, was caused by [Defendant]." *Id.* This Court has observed that "defenses may reasonably be based on [a plaintiff's] condition or state of health prior to the dates of the allegations in the complaint." *Bennett v. Interfor Pac., Inc.*, No. C10-5277BHS, 2011 WL 2551409, at *2 (W.D. Wash. June 27, 2011). It has also observed that "[w]ithout disclosing [the plaintiff's] conditions before



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

Defendants' conduct, it would be impossible to determine the increase in [her] distress." *United States v. Barber*, No. C13-5539 BHS, 2014 WL 2515171, at *1 (W.D. Wash. June 4, 2014). In another employment discrimination case, a plaintiff made the same argument Suchodolski makes here: that "her medical records related to her mental health before the alleged wrongdoing are irrelevant because these records are unrelated to treatment she sought because of Defendant's actions." *Erickson v. Biogen, Inc.*, 2019 WL 3238470, at *2 (W.D. Wash. July 18, 2019). The court rejected that argument, holding that the defendant "is entitled to present evidence that other stressful situations in [the plaintiff's] past personal history have contributed to her emotional distress." *Id.* So, too, here.

Suchodolski's other arguments are also unavailing. As this Court has recognized regarding medical records discovery, "concerns regarding privacy and disclosure may be handled with appropriate non-disclosure agreements or orders should the need arise." *Bennett*, 2011 WL 2551409, at *2. Here, the Court has *already* entered a *stipulated* protective order specifically to maintain the privacy of Suchodolski's medical records produced in discovery. Most of Suchodolski's Proposed Protective Order filed with the instant motion is already covered by the operative protective order. *Compare* Dkt. 39 at 7-8 ¶¶ 3-9 *with* Dkt. 31.

Suchodolski also incorrectly asserts that the only medical conditions at issue in this case are PTSD, insomnia, and a cracked tooth. Dkt. 39 at 2. But she also seeks damages for respiratory infections allegedly caused by "stress." Ex. D at 9-10; Ex. L at 58:23-59:21. These allegations not only underscore the relevance of any pre-existing stress- or anxiety-related psychological conditions, but also place Suchodolski's *physical* health at issue.

Suchodolski also appears to argue that Defendant's subpoenas should be limited to specific, narrowly circumscribed medical conditions. For instance, she contends Defendant's subpoenas should be limited to "physical conditions tied to emotional distress or mental health"



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

or "an emotional state or condition specifically raised by the Plaintiff and for which she seeks monetary relief." Dkt. 39 at 3-4, 7. This limitation is unworkable. It is impractical for third parties to manually sift through Suchodolski's records and make independent assessments of which records are "relevant" or concern "physical conditions tied to emotional distress or mental health," and even if such parsing were feasible, it would impose an undue burden on the third-party subpoena recipients. Further, Suchodolski's privacy is amply protected by the existing protective order.

Suchodolski also incorrectly asserts that "Defendant declined to engage in a good faith discussion" regarding her intent to file this motion for a protective order. Defendant explained its position in detail and offered to meet and confer telephonically, which Suchodolski declined to do. Ex. N at 3. Defendant also offered to compromise by limiting its subpoenas for psychological records to ten years prior to when Suchodolski alleges her harassment began in 2019. *Id.* at 1. Suchodolski did not respond to this offer, nor mention it in her motion. Importantly, this offer was made prior to Dr. Light's testimony confirming the relevance of Suchodolski's psychotherapy from 2003-2008 to her current PTSD diagnosis, and was intended to *avoid* this dispute. Given the intervening testimony and Suchodolski's rejection of the compromise offer, the Court should permit Defendant to seek psychological records dating to at least 2003, when Dr. Light began treating Suchodolski.

Finally, Suchodolski's motion also incorrectly asserts that Defendant is "without evidence" that she has failed to produce relevant records. Dkt. 39 at 3. But discovery has shown that Suchodolski did not request records for the full period responsive to the RFP, and treating psychotherapist Baker testified that Suchodolski *never* requested responsive records. Decl. ¶ 21. Further, Suchodolski's counsel represented on January 21, 2025, that "[a]ll responsive records have already been produced," Ex. K at 4-5, then two days later, Suchodolski testified under oath



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

that this was not true. Ex. L at 73:17-23. Since her counsel's representation, Suchodolski has made two productions of responsive records, some of which consist of invoices for medical services for which no corresponding medical records have been produced. Decl. ¶¶ 5, 16. And when Defendant served a subpoena on AllCare, a provider Suchodolski lists in her Interrogatory response but from which she has produced no records, AllCare mailed responsive records to Defendant *within two days*.[4] Decl. ¶ 17; Ex. P; Dkt. 39-1 at 27-38. Defendant has been waiting to receive these records from Suchodolski for a *full year*. If Defendant is not permitted to seek records directly from providers, the extent of responsive records that are still missing will remain unknown.

**B. The Court Should Order Suchodolski to Sign a Medical Release**

Courts in this district regularly compel parties to execute authorizations for the release of relevant medical records. *Melendez v. Gulf Vessel Mgmt., Inc.*, 2010 WL 2650572, at *2 (W.D. Wash. July 1, 2010); *see also Ginter*, 2014 WL 294499, at *3; *Putterman v. Supreme Chain Logistics, Ltd.*, 2018 WL 6179325, at *3 (W.D. Wash. Nov. 27, 2018) (collecting cases). With dispositive motions due March 26, and trial scheduled for June 24, 2025, Defendant's need for responsive medical records is urgent, especially since Defendant may need to seek the Court's leave to take additional depositions based on newly produced materials. Accordingly, Defendant requests that the Court order Suchodolski to execute the release authorization filed concurrently herewith as Exhibit Q so Defendant may expeditiously obtain relevant records directly from providers.

## CONCLUSION

[4] Consistent with Virginia law, Va. Code. Ann. § 32.1-127.1:03(H), after providing Suchodolski with notice, Defendant served AllCare with a subpoena, along with a statutorily required notice instructing them not to respond until receiving notice that no motion to quash was filed or that any such motion had been resolved by the court. *See* Dkt. 39-1 at 31-34. AllCare produced records despite this notice.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101
206-553-7970

For the foregoing reasons, the Court should deny Suchodolski's Motion and order her to execute a medical records release authorization.

DATED this 24th day of February, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Sean M. Arenson*
SEAN M. ARENSON, WSBA No. 60465

*s/ Alixandria K. Morris*
ALIXANDRIA K. MORRIS, TX No. 24095373
Assistant United States Attorneys
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-7970
Fax: 206-553-4067
Email: sean.arenson@usdoj.gov
Email: alixandria.morris@usdoj.gov

*Attorneys for Defendant*

I certify that this memorandum contains XXXX words, in compliance with the Local Civil Rules.